This is C.E.W. Properties v. U.S. Department of Justice, No. 19-6114. Mr. Strand, you may proceed. Thank you, Your Honor. May it please the Court? I would like to reserve two minutes for rebuttal. Orion Strand, I'm an attorney for the appellant, C.E.W. Properties. C.E.W. Properties is a small Mr. Wilson is a former reserve deputy sheriff for Cleveland County, Oklahoma, and he operates primarily in asset recovery business, but he opened up C.E.W. Properties in order to engage in small-volume dealings with his friends in the law enforcement community. In 2017, the ATF conducted its first compliance inspection of Mr. Wilson's premises and found that he wasn't keeping his records correctly, that he wasn't completing his transfer paperwork correctly, and that he wasn't performing background checks on these individuals he was selling guns to. And so those are the three major categories of violations, and the revocation hearing ATF found that all of those violations were willful. Now, willfulness, as you know, is a term of art. It requires two components. One of those components is knowledge of the law, and the other one is either willful and, I'm sorry, purposeful disregard or plain indifference. And so for each of these violations, the ATF found that those violations were willful. Now, on the record-keeping violations, Mr. Counsel, let me just ask a question about the way this court should be looking at the issue at this point. District Court entered summary judgment, correct? And you're not contesting the violations. We're really just talking about the willful element. And so here's my question. Is the question whether there's a genuine issue of or is it whether there's a genuine issue as to whether there was sufficient evidence that the violations were willful so that the Attorney General was authorized to revoke the license? I think it's both, Your Honor. And I think that there's a lack of evidence that the violations were willful, but there's also a lack of evidence that there's insufficient evidence in the record that the District Court construed all the evidence in the favor of the non-movement and improperly entered summary judgment on that basis as well. So what if there is no genuine issue of material fact on one of the violations and there is a genuine issue of material fact on other violations, would we be obligated to affirm? I think you'd be obligated to reverse because the District Court found that there's every single one of the violations was willful, despite evidence that these were honest mistakes and that there was no evidence, there was no admissions in the record, there was no repeat violations. And so if you find that maybe some of them were excusable just for excusable neglect, then the District Court should be reversed. But isn't one willful violation sufficient for revocation? It is. And that's why I'm arguing in this case that none of these violations were willful. But also I think it's clear from the record that at a minimum, several of them were not willful. But don't you have to win on, you have to convince us on all of them for us to if even one violation was willful, as Judge Mathison just pointed out, then the District Court was correct to grant summary judgment. Isn't that the issue before us? Yeah, I agree. That is the issue before you. They only need to prove one willful violation. So our argument today is that none of these violations were willful. Well, let's say that we end up agreeing with you that as to everything, there is a genuine issue of material fact as to willfulness. What's supposed to happen next? If your arguments prevail at this stage, what happens next? Goes back to the District Court, and then what's the District Court supposed to do? Well, Your Honor, I think you would have two options. I think you could reverse the District Court's findings and reinstate my client's firearms license, in which case it would be dependent on subsequent compliance inspections on whether or not those violations are repeated in the future. And if those violations are repeated in the future, then the ATF would have some solid evidence that Mr. Wilson knew the regulations, was warned of them, and still continued to violate them. And I think that would be clear evidence of willfulness. Another thing that you could do is... Let me stop you there. Is that, in your opinion, the only evidence of willfulness that suffices, that somebody is cited for a violation and then they subsequently repeat the same violation? Your Honor, in the vast majority of cases across the country... But that's not my question. My question isn't whether we have a lot of cases where that is the fact pattern. My question is, can there be evidence of a willful violation when there isn't a repeated violation? Yes. Yes. And the answer to that is yes, there can be. But in the absence of a repeat violation, you need something additional in the record to prove willfulness. One of those things that you can do is show that the licensee is not a victim. Go ahead, Judge. No, go ahead. Thank you. Isn't that exactly what Mr. Rice did at pages 64 and 65 on the background checks, when he says, quote, he's told by an investigator that you have to do it, get a background check on every buyer. He goes, I'm not going to do it with guys that I'm kicking in the door on. That's an explicit admission that he knew the requirement and he wasn't going to do it. Well, Your Honor, I don't believe that's an admission because I think what Mr. Rice was referring to at this point was on the first compliance inspection, whenever the ATF officer cited him for not performing these background checks, Mr. Wilson's response to that was, well, I've worked with these people. These are the heads of their agencies. And in other words, so he decided after he was confronted by the ATF agents that he would go ahead and do it, right? Yeah. Following the compliance inspection, his attorneys counseled him on what the ATF rules and regulations require. Now, that's right. And that's what Mr. Rice then says. Right. And it wasn't what the ATF said. It was what Mr. Rice said that even the president of the United States has to get a driver's license, which sounds to me like it's in the context of this litigation or in the context of the administrative hearing that's taking place. Not when he is, he is completely explicitly saying he's going to disobey ATF, not because he didn't know that it was required, but because he wasn't going to Why isn't that a conclusive evidence that he knew the requirement and he didn't want to do it until Mr. Rice convinced him, not the ATF? Well, your honor, I guess my response to that would be that Mr. Wilson's initial reaction whenever he was told by the ATF officer that you have to do compliance on these, you have to do background checks on these individuals, regardless of their background. My first thought was, well, they're already they're my friends. I know them personally. I know they're not public risk. They are heads of their agencies, active law enforcement personnel. And moreover, I'm embarrassed to do those things because I know them personally, and they've already passed all the background checks that they've needed to pass in order to hold their positions. And so there's nothing in the record that says where Mr. Wilson says, no, I knew that they were they're supposed to do background checks. I just didn't want to because I was What he says was his initial reaction was, I don't want to do this because I know them and I'm embarrassed to do it. There's no admission in the record where he says that he knew that he was supposed to and that he chose not to because he didn't want to. And I think that argument either to Judge Cothran or to us until just now. No, because the district court primarily ruled on the basis that repeat violations are not necessary. And that a signed acknowledgement by a licensee of a duty to know the law and to inform themselves of the requirements in itself is sufficient to show willfulness upon a violation. Well, it wasn't just the acknowledgements that he signed. It was also the three separate times that he went through training Right. And ATF agent. And then, and also the time that he spent operating with their businesses. So it wasn't just, oh, you've signed this form, we've got yet. It's knowledge. There was a lot more to it. Wasn't it? Yeah. And the Thank you, Your Honor. The prior license applications that Mr. Wilson had submitted on behalf of American Recovery Specialist in 1993. And then again, on SPD tactical in 2004, I believe, or 20, I believe it's 2012. Now, he never did any kind of volume of business with those companies. And so the distinction that I would draw out there is having a theoretical requirements explained to you as here's what you're supposed to do, as opposed to developing a working knowledge of how to put these rules into practice on the ground and make sure that you are complying with all the requirements. What we had here was 15 transactions total that were that comprised the totality of the form violations in the background checks that we're talking about here. Well, we have 4,473 separate errors on those forms, right? No, there were, I think there were 23 violations on the disposition forms and there was 277 violations on the A&D book because each individual firearm that was not kept in the book was an individual violation. Well, and so looking at those forms, there are some instances where Mr. Wilson correctly fills out the form, goes through and fills in every box and has all of the information that's required. And then there's other instances where he doesn't. Doesn't the fact that he sometimes does it correctly indicate that he knows how to do it correctly? Well, your honor, I think our response to that would be this, that I would draw the distinction of the level of diligence and meticulous effort that you have to put into fulfilling these requirements there. I think Mr. Wilson had a misunderstanding of, well, I just need to do a few of these boxes, the important things, and that's sufficient. So it's a misunderstanding about the level of diligence that you need to exercise, which is a result of the low volume nature of his business. Very small numbers of transactions. Wasn't one of the shortfalls though on the forms, the failure to Wasn't there an error on all of the 4473 forms? Yes. Well, as long as we're digging into this, did CEW's records, they say he kept records in file folders and on a flash drive rather than the A and D bound book. Right. Was all the information that was supposed to be on the A and D book contained in the file folders and the flash drive? No, he didn't have all the information in those formats, but following the compliance inspection and prior to the revocation hearing, he was able to construct an A and D book, which is required, which did have all of that information in it. So it wasn't all in the bound file books. It wasn't all in the flash drive, although most of the information was there, but he did some digging through his old records and he was able to remanufacture that book with all of the required information in it. And not for all of the weapons, right? There were NFA item silencers that were missing and he filed lost theft reports for those. And so he did everything that he could to remedy his mistakes. And I think that... Is that relevant to whether his violations were willful? It is. Something that he did after he got caught? If you look at the case law, there's a minority of cases where, you know, if you look at the sporting goods, RSMV Herbert, all of these cases stand for the proposition that mistakes happen. It's a consequence of human error. That does not show willfulness. You need something more. You need admissions or you need repeat violations at a minimum in order to establish willfulness. So, we would just ask the court to reverse the district court's findings. Thank you. Thank you, Mr. Strand. Any further questions from the panel? Okay. Thank you. We'll turn to Ms. Frazier. Thank you, Your Honors. Can you hear me okay? Yes. AUSA Rebecca Frazier on behalf of the ATF. This case is about willfulness. Mr. Wilson had 261 firearms in his physical inventory. The ATF has no idea where they came from. Mr. Wilson failed to conduct background checks on his friends expressing his embarrassment at doing so. His counsel just, again, referenced that embarrassment. Finally, the ATF only had 12 Form 4473s to audit in Mr. Wilson's files. Mr. Wilson stated he may have shredded the rest. Notably, there was a 100% error rate on those forms. In this case, finally, there were three suppressors missing. Mr. Wilson didn't realize that those suppressors were missing until the ATF conducted a compliance inspection. If this case isn't willfulness, then what is? Well, my question, Ms. Frazier, is this might be a completely different case if Judge Cawthorne had conducted a bench trial or even a trial on stipulated facts, but she decided to adjudicate this on summary judgment. And typically, we almost always consider willfulness to be an inherently genuine, a factual issue. And so it's so rare that we would hold a summary judgment to decide as a matter of law that somebody has done anything willfully. Would you agree with that? Your Honor, I would respectfully disagree. For this line of cases, the case law almost conclusively establishes willfulness based on the briefing before the court and based on summary judgment. And that is in part because of the extensive record that's provided to the court. In this case, for example, almost 400 pages of the luminous evidence and evidence provided to the court for the court to make that determination. I would also say that Mr. Wilson attempts to narrowly construe all of the evidence that was considered by the court. Mr. Wilson's legal counsel pointed to there needing to be prior warning or some type of admissions. I would respectfully invite the court's attention to the Simpson case from the Third Circuit. In that case, there were no admissions from Mr. Simpson. And this was the case where he received his revocation. There was no prior warning. It was his first inspection, essentially. And in that case, the court considered the fact that Mr. Wilson had received training from the ATF through those application inspections. That's extensive training that can last for up to four hours, where the ATF sits down on a one-on-one basis with the individual. The individual has an opportunity to ask questions of the ATF. They go through a very detailed process. Mr. Wilson agreed throughout the record that he participated in this process. Specifically for his 2003 and 2012 licenses, we have checklists that were provided to the court. And you can see on those checklists, we went over the A&E book with him. We went over the background checks. We went over background checks for law enforcement with Mr. Wilson. We discussed the Form 4473s in a very detailed manner with him. So the test before this court is whether or not he knew or generally knew. And based on those acknowledgements alone, I think that Mr. Wilson generally knew what his obligations were under the GCA. Oh, counsel, counsel, just so I understand your position, are you saying that the acknowledgement that the licensee must acquaint itself with compliance when there's a failure to comply? Acknowledgement alone typically is not going to be the only thing that the court considers. For example, in Simpson from the 11th Circuit, Willingham Sports, or Simpson from the 3rd Circuit... Well, let me just, sorry to interrupt, but I understand that courts may consider other things. But my question is whether that's enough. Whether the fact that he signed off three times, do we need anything else? It's enough to show that he generally knew. For that first prong as to his knowledge, I would say it's sufficient to establish that. Whether he was plainly indifferent to his requirements, that's typically established through some other evidence before the court, whether that be through admissions, whether it be through actions or inactions. That second prong is typically established through additional evidence. But as far as his knowledge, whether he generally knew his requirements, I would say that can be established based on the acknowledgements alone. So the statute speaks directly to what a court is supposed to consider after the administrative decision has been made. And the provision is section 923 F3, and it asks whether the, or we're asked to decide whether the attorney general was authorized to revoke the license. Does the fact that there is, that there was an administrative decision following an informal administrative hearing, how does that affect the way summary judgment should be applied once we get into the federal district court and now on appeal? Well, I would direct the court to some of the language from as well as American arms from the fourth circuit. American arms in the fourth circuit said that the administrative record is entitled to verity and that the administrative record in these types of cases simply by submitting it means that there's no genuine issue of material fact. It's up to the licensee at that point, even before the court on summary judgment to present some type of additional evidence, creating a genuine issue of material fact. And so I think those are additional pieces of evidence for the court to consider. Essentially that you have this extensive, extensive administrative record from the ATF. They've conducted a hearing. They have a multitude of pieces of evidence clarifying what the violations are and what their investigative techniques were. And all of that is submitted to the court for its consideration. Finally, I would direct the court to Steins from the seventh circuit. In that case, the court essentially said that the district court can give whatever weight to the evidence presented by the ATF that it would like. And so, you know, again, in this type of case, the district court can make that determination. But unlike an APA case, this is an issue where we have to conduct de novo review, right? That's correct. And so as it's a, we had the, at least the district court would conduct a novel review and make its own determination of whether these violations were willful, right? That is correct, your honor. And so back to my question, uh, to, uh, Mr. Strand, uh, or my earlier question to you. So, but she decided to do this through summary judgment. And so, and so if any reasonable fact finder could conclude that he was sloppy, he wasn't careful, you know, people know to, uh, to do, to, to check typos, but we get a lot of briefs with typos. So people make mistakes. People are not, uh, not infallible. And we know that he originally thought perhaps when he was going through these training programs, that he didn't need to give background checks to these law enforcement officers since they had already gone through background checks. And so maybe he thought, uh, couldn't a reasonable fact finder viewing the evidence of the light most favorable to, uh, him conclude that, uh, or CEW conclude that he, you know, had a, a reasonable mistake of law. He didn't think he needed to do that. Why aren't those reasonable inferences to be drawn from the evidence for purposes of summary judgment? I would say based on the totality of the evidence here, your honor, and there is extensive evidence that Mr. Wilson's actions were willful regarding negligence. I would say your honor, um, you could potentially argue negligence if we're talking about one error on one form. In this case, Mr. William, Mr. Wilson had a 100% error rate. So he didn't do that, that, that the A and D bound volume, right? That's why you get a hundred percent. Well, the 100% error rate was on the forms, but it was also for the A and D record. And I would like to clarify for the court. We're not talking about whether Mr. Wilson had file folders and a flash drive or a bound book. We're talking about the ATF going to conduct a compliance inspection and discovering 261 firearms in his physical inventory. We have no idea where they came from. Um, we're talking about AR-15 suppressors, um, silencers. Um, we don't know where those firearms came from. And that's because the key information required for an A and D book, the acquisition information and the disposition information, where you received the firearms from and to whom you sold them. Mr. Wilson didn't have any of that in his records. So again, when you look at the egregiousness of the violations here, the totality of the circumstances here, it clearly rises to the level of plain indifference. Um, and for example, you know, Mr. Wilson has also conceded that three fire, three suppressors were missing. He didn't realize those suppressors were missing until the ATF conducted a compliance inspection at a minimum. Uh, if nothing else, you should know where the inventory of your firearms, you should know if you have two suppressors missing or one, and there's even requirements that you report that within a certain timeframe, uh, which Mr. Wilson didn't do here because he didn't realize that the suppressors were missing. Um, regarding his embarrassment, his counsel talk touched on this a bit earlier. Um, and I'd like to go back to that. That's also a clear inference as to his willfulness. Embarrassment implies, uh, that you understood your legal obligations and you had some discomfort associated with executing those obligations. Um, Mr. Wilson expressed his embarrassment at the scene at the compliance inspection to ATF investigators. And then his own attorney referenced this embarrassment at the administrative hearing. And then regarding Mr. Wilson's comments about background checks, he told investigators on two separate days on August 1st and August 8th, I know these checks are required. I'm not going to conduct them. Um, to me, those are clear examples of his willfulness. Mr. Wilson realizing what's required, uh, and being plainly indifferent to it. Uh, finally regarding why he failed to conduct the background checks. Mr. Wilson talks about high ranking officials. Uh, his law, his, his, uh, legal counsel referenced the president, president and the governor, uh, at the administrative hearing. Mr. Wilson himself talked about heads of law enforcement agencies and the sheriff feeling as though these individuals do not need a background check. It's redundant based on their high level status, but then he concedes that he failed to conduct background checks online police officers, uh, who were not the heads of law enforcement agencies. So I think all of these inferences gathered together, it's clear that Mr. Wilson understood background checks were required and he failed to conduct them. Um, I would also mention, and his attorneys have referenced it multiple times that Mr. Wilson was former law enforcement. Uh, so you would think out of all requirements and the importance here of adhering to those requirements, it would be someone who's former law enforcement, someone who is friends, uh, with heads of law enforcement agencies. Um, I also want to highlight just briefly on the forms themselves. Um, Mr. Wilson has quite tried to equate this to negligent technical errors, minor mistakes. As far as his violations on the Um, he failed to certify that the purchaser wasn't prohibited from possessing a firearm. Mr. Wilson failed to certify that he felt to have the purchaser give this certification. These are basic core foundational requirements. And when you consider the level of egregiousness here, the fact that he just essentially had a small arsenal in his physical inventory, he didn't document where any of these firearms came from. Um, the fact that with the forms, this basic foundational information that has to be maintained and completed on the forms, he just completely disregarded it in some instances, but then in other instances, he completed it properly. Again, given the totality of all of the evidence here, it clearly rises to the level of plain indifference. Um, finally, I would emphasize for this court, as Mr. Wilson's legal counsel conceded a single willful violation is all that's not necessary. The ATF only has to identify one single willful violation. And clearly in this case, all of the violations are willful. And that's why I believe the district court didn't go through line by line in an itemized manner, um, and, and make a specific reference for every single violation. Because when you consider the totality of the evidence here, it's pretty clear that this willfulness was advocate with, with that, uh, with whether or not, uh, he needs to invalidate each one of the violations. If there was one violation that was valid, uh, that there was willful and that there were others that weren't, what about a contrary argument? And that is that we don't know if ATF actually would have revoked his, uh, gun dealers license had ATF realized that it was just this one violation as opposed to all of these violations. What's wrong with that way of thinking? Well, that is at the ATF discretion. And I would say based on the case law and the statutory provisions, it is well within the ATFs right to revoke based on a single willful violation. But we don't know whether they would have, that's what I'm trying to probe. We don't know whether, uh, the ATF would have exercised his discretion to revoke the license based on one violation. All we know is that with the combination of these multiple violations, they thought that the combination was, uh, enough to revoke the license. Uh, I would say we don't know your honor. Uh, we don't know because that's not the specific fact pattern before the court. Um, I would say though that again, when the ATF considered the violations in their totality, uh, the egregiousness of them, even though Mr. Wilson had not received prior warning, it was clear that the license needed to be revoked. Finally, I would just say in closing your honors in 2017, the ATF only revoked one half of 1% of FFLs. In this case, Mr. Wilson, um, only raises the issue of willfulness before the court. It's the quality and quantity of these violations that are admitted that clearly rise to the level of plain indifference. This is more than mere negligence, 100% error rate on forms. He didn't know where 261 firearms came from in his physical inventory. Three silent counsel. You should just sum up now you're over time, but go ahead and finish your thought. I'm sorry. Your honors, a single willful violation will suffice. If this isn't willfulness, then what is? Thank you. Thank you. Counsel. Uh, thank you to you. But to you both appreciate the arguments this morning case will be submitted. Counselor excused.